**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  08-cv-01796-REB-KLM

TESSA OLSON,

      Plaintiff,

v.

QWEST COMMUNICATIONS CORPORATION, a Delaware corporation, and
QWEST COMMUNICATIONS INTERNATIONAL, INC., a Delaware corporation,

      Defendants.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the following: (1) **Defendant's Motion for Summary Judgment and Memorandum Brief in Support** [#26][1] filed June 15, 2009; and (2) the parties' **Stipulated Motion To Vacate Trial Date** [#44] filed October 20, 2009.  The plaintiff filed a response [#36] to the motion for summary judgment, and the defendant filed a reply [#37].  I grant the motion for summary judgment and deny the motion to vacate as moot.[2]

### I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

---

[1]  "[#26]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2]  The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* FED. R. CIV. P. 56(c) and (d). *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.  56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

## III. FACTS

For the most part, the facts are not disputed.  To the extent the plaintiff disputes the facts cited by the defendant, those disputes are noted, where relevant, below.  The plaintiff, Tessa Olson, has been employed by Qwest Corporation since June 20, 1995. She currently holds the position of Load Specialist.  In June, 2006, Olson applied for a job as a Customer Communications Technician (CCT) with Qwest.  I will refer to this particular opening for a CCT as the June CCT Position.  This position, if awarded, would have been a promotion for Olson.

As part of the application process, Olson submitted answers to an initial screening questionnaire.  These questions permit Qwest to determine if an applicant has the minimum qualifications for the position.  Olson scored a 93 on the initial screening questions.   Olson's name and the names of seven other internal candidates

2

who passed the initial screening, based on the questionnaire about qualifications, were

forwarded to management for technical interviews, and each of the eight candidates

was interviewed.  The technical interviews were conducted on July 26 and 27, 2006.

During the technical interviews, each candidate was asked the same ten technical

questions, and the interviewers recorded whether the candidates's answers were

correct or incorrect.  The technical interviews were conducted by J.W. Culbertson,

Supervisor of Network Operations, and Joe Strezishar, a supervisor in the design

services department.  Two candidates, Jeremy Stahl and John Maltese, both scored 95

on their technical interviews.  Olson scored 60 on her interview.  After the interviews, a

summary of the interview results was forwarded to the staffing department.  Sandy

Brown, Senior Recruiter in the staffing department, made the final decision to offer the

June CCT Position to Maltese because Maltese had one of the two highest interview

test scores, along with Stahl, and because Maltese had a longer term of employment

than Stahl.  On August 22, 2006, Maltese officially was offered, and accepted, the CCT

position.

On August 16, 2006, six days before Maltese officially was offered the CCT

position, Olson filed a charge of discrimination with the EEOC, alleging that the

selection of Maltese for the June CCT Position constituted gender discrimination. Olson

knew of the impending official offer to Maltese before Maltese officially was offered the

job.  Olson agrees, however, that she was not the most qualified applicant for the June

CCT Position. *Motion for summary judgment*, Exhibit A (Olson Depo.), 107: 19 - 24.

On August 22, 2006, Olson applied for four additional CCT positions that Qwest

was seeking to fill.  Several of the initial screening questions for these positions were

changed, as compared to the questions asked during the initial screening for the June

CCT Position.  However, the last ten initial screening questions were the same in both the June and August, 2006, applications.  The last ten questions asked the applicants whether they had at least twelve months of experience working with various technical procedures and programs.  Olson scored 70 on the initial screening for the positions available in August, 2006, and was not selected for further participation in the application process.

On August 21, 2006, the day before Olson applied for the August 2006, CCT openings, the Qwest staffing department received an anonymous e-mail in which the writer claimed that Maltese had falsified his answers on the initial screening questionnaire for the June CCT Position.  Sandy Brown of the Qwest staffing department began to conduct an investigation into Maltese's June questionnaire.  After she applied for the August 2006, CCT openings, Olson sent Brown an e-mail asking why several of the initial screening questions were different in the August, 2006, screening, as compared to the June, 2006, screening.  In an effort to address Olson's inquiry, Brown reviewed Olson's answers to both the June and August initial screening questions.  Brown noted significant discrepancies between Olson's answers to the last ten questions on the June questionnaire and the last ten questions on the August questionnaire.  These ten questions were identical on both questionnaires.

After speaking with Olson and Maltese, Brown concluded that both had falsified their answers to the initial screening questions on their June, 2006, questionnaires.  Olson admits that she answered the same questions concerning her experience differently on the June and August questionnaires.  *Motion for summary judgment*, Exhibit A (Olson Deposition), 117:13-25; 119: 12-25; 120: 24-25; 121: 1-6; 125:21-24.  Olson admits also that on the June questionnaire, she indicated that she had the

required level of experience when, in fact, she did not. *Motion for summary judgment*, Exhibit T, p. 15. On August 29, 2006, Sally Bakarich, Manager of Network Operations, interviewed Olson about the discrepancies in her June, 2006, and August, 2006, questionnaires. Bakarich conducted a similar interview with Maltese on August 28, 2006.

As a Qwest employee, Olson is required to abide by the Qwest Code of Conduct, which contains an accurate books, records, and accounting policy. This policy states that "[n]o false or misleading entries should be made in any way in any of Qwest's books, records or accounts for any reason, . . . ." *Motion for summary judgment*, Exhibit C, p. 12. An employee who violates this policy is subject to discipline up to and including termination of employment. *Id.*, pp. 4 - 5. After interviewing Olson and Maltese, Bakarich told both of them that Bakarich was recommending that a documented discussion be placed in Olson and Maltese's files because they each supplied misleading responses on the June, 2006, questionnaire. Bakarich told both Olson and Maltese that the final disposition of the matter could change, depending on the input of senior management and labor relations. On September 1 and September 6, 2006, Bakarich and Lesli Burden, Lead Human Resources/Labor Generalist, discussed the results of Bakarich's investigation. Burden concluded that a documented discussion in Olson and Maltese's files would not be the appropriate level of discipline for the violations of the Qwest Code of Conduct committed by Olson and Maltese. *Motion for summary judgment*, Exhibit V (Burden Affidavit), ¶¶ 6-7. Rather, Burden concluded that written warnings should be placed in Olson and Maltese's files. *Id.* On September 27, 2006, Burden confirmed with Bakarich that this would be the discipline imposed on Olson and Maltese. *Id.* This decision was formalized on October 23,

2006, when Olson's immediate supervisor issued a written warning to Olson for the falsification of Olson's answers on the June, 2006, initial screening questionnaire. *Motion for summary judgment*, Exhibit X.  The offer of the CCT position to Maltese was withdrawn and Maltese was issued a written warning for violating the Qwest Code of Conduct by falsifying his answers on the June, 2006, questionnaire.  *Motion for summary judgment*, Exhibit Y.

In her complaint, Olson asserts two claims for relief.  First, she asserts a claim of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e (Title VII).  She alleges that she was denied the June CCT Position because she is female.  Second, Olson asserts a claim of retaliation under Title VII.  Olson alleges that she filed a complaint with the EEOC alleging sex discrimination.  In retaliation for her EEOC complaint, Oslon alleges, Qwest took adverse action against her by issuing to her the written warning concerning Olson's inaccurate answers on her June, 2006, questionnaire.

## IV.  GENDER DISCRIMINATION

Olson has not presented any direct evidence of gender discrimination concerning Qwest's decision not to hire Oslon for the June CCT Position.  Therefore, I employ the familiar burden-shifting analysis of **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04 (1973).  If the plaintiff satisfies the burden of establishing a *prima facie* case of gender discrimination, then the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  If defendant meets this burden, then plaintiff then must prove the ultimate fact of discrimination by showing that defendant's proffered reason is pretextual.  *See* **Young v. Dillon Companies, Inc**., 468 F.3d 1243, 1249 (10th Cir. 2006) (Title VII); **McKnight v. Kimberly Clark Corp.**,

149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA).

### A.  *Prima Facie* Case

To establish a *prima facie* case of gender discrimination, Olson must establish that (1) she was a member of a protected class; (2) she applied for and was qualified for an available position; (3) she was rejected; and (4) the defendant promoted other persons with her qualifications who were not members of the protected class, or the promotion remained open.  ***Garcia v. Pueblo Country Club***,  299 F.3d 1233, 1238 (10th Cir. 2002).  It is undisputed that, in the context of a gender discrimination claim, Olson, a female, is a member of a protected class.  Further, it is undisputed that Olson applied for the CCT position and was rejected.  Olson's prima facie case founders, however, on the issue of her qualifications for the June CCT Position.  Again, Olson admits that on the June questionnaire, she indicated that she had the required level of experience when, in fact, she did not. *Motion for summary judgment*, Exhibit T, p. 15.  Although Olson represented herself as being qualified for the CCT position in June, 2006, it is undisputed that she was not qualified for the June CCT Position.  Absent some evidentiary basis on which a reasonable fact finder could conclude that Olson was qualified for the June CCT Position, I cannot conclude that Olson has established a prima facie case of gender discrimination.  On this basis, Qwest is entitled to summary judgment on Olson's gender discrimination claim.

### B.  Pretext

Alternatively, if Olson had established a *prima facie* case of gender discrimination, then the next step in the ***McDonnell Douglas*** analysis is to determine whether Qwest has stated a legitimate non-discriminatory reason for not selecting Olson for the CCT job.  If Qwest has stated such a reason, then I must determine whether

Olson has come forward with evidence to support a conclusion that Qwest's stated reason is a pretext for discrimination.  At the time of Qwest's hiring decision concerning the June CCT Position, Qwest did not hire Oslon for the CCT job because she did not have the highest technical interview score.  Again, two candidates, Jeremy Stahl and John Maltese, both scored 95 on their technical interviews.  Olson scored 60 on her technical interview.  This constitutes a legitimate non-discriminatory reason for Qwest's decision not to hire Olson.

To survive summary judgment in this evidentiary context, Olson must come forward with evidence that would permit a reasonable trier of fact to conclude that Qwest's legitimate, non-discriminatory reason for not promoting Olson to the June CCT Position is unworthy of credence, and was a pretext for gender discrimination.  If such evidence exists, then a reasonable trier of fact may infer that Qwest did not act for the asserted non-discriminatory reasons.  "Pretext may be demonstrated by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morales v. McKesson Health Solutions, LLC*, 136 Fed.Appx. 115, 118 (10th Cir. 2005)(*citing Morgan v. Hill, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  Recognized categories of proof of pretext include proving the articulated reason is not the true reason, *York v. AT&T*, 95 F.3d 948, 954 (10th Cir. 1996); proving the plaintiff was subjected to different discipline or terminated differently than other employees who committed the same or more serious offenses, *McDonnell Douglas*, 411 U.S. at 804; *Elmore v. Capstan, Inc.*, 58 F.3d 525 (10th Cir. 1995); *David v. City & County of Denver*, 101 F.3d 1344 (10th Cir. 1996);

and the articulated reason is unworthy of credence, *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).

In an effort to demonstrate that Qwest's legitimate non-discriminatory reason was a pretext for gender discrimination, Olson points to her observation that, prior to the hiring decision, Maltese was provided certain training opportunities related to the CCT position while Olson was denied such training opportunities. *Objection to motion for summary judgment* [#36], Exhibit 2 (Olson Affidavit), ¶¶ 1, 2, 4.[3] Assuming that the provision of training to Maltese might be evidence of pretext, this evidence only tends to demonstrate the pretextual motive of a decision maker if the provision of the training to Maltese is tethered factually to a person who made, or was involved in, the ultimate hiring decision at issue. Again, Brown ultimately determined who would be hired for the June CCT Position, and Brown's decision was informed by the technical interviews conducted by Culbertson and Strezishar. Olson does not provide evidence demonstrating who in Qwest management authorized or permitted Maltese to undertake the additional training. Absent some tie to the people who made the hiring decision on the June CCT Position, Culbertson and Brown, the provision of these training opportunities to Maltese cannot be seen as supporting Olson's claim that Culbertson and Brown's decisions were pretextual.

Olson claims also that the evidence shows that Culbertson was coordinating the hiring of his chosen male candidate and, thus, Culbertson's hiring decision was influenced by gender discrimination. *Objection to motion for summary judgment* [#36], Exhibit 2 (Olson Affidavit), ¶ 6. She cites an e-mail written by Culbertson on August 7,

---

[3] I have disregarded those portions of Olson's affidavit that constitute inadmissible hearsay, such as the first sentence of paragraph 1.

2006, as support for this contention.  *Id.*, Exhibit 1.  In this e-mail, Culbertson informed

Olson that a selection for the June CCT Position had been made and that Olson had not

been selected for the position.  *Id.*  This e-mail does not support Olson's claim that

Culbertson was coordinating the hiring of his chosen male candidate.  Olson cites also

an e-mail sent by Sharon Lee on August 21, 2006, but Olson does not include this e-

mail as an exhibit to her objection to the motion for summary judgment and does not

specify any other exhibit in the record that includes this e-mail.

Finally, Olson says she believes that the technical interviews conducted by

Culbertson were subjective and that the results were related to Culbertson's

discriminatory motive.  *Id.*, ¶ 8.  Absent tangible, objective evidence about the objectivity

or subjectivity of the technical interviews conducted by Culbertson, Olson's belief about

the process does not tend to demonstrate pretext.  Olson has not come forward with

any such evidence.

In short, viewing the evidence in the record in the light most favorable to Olson,

the evidence cited by Olson would not support a finding be a reasonable fact finder that

Qwest's legitimate, non-discriminatory reason for not promoting Olson to the June CCT

Position is unworthy of credence, and was a pretext for gender discrimination.  On this

basis also, Qwest is entitled to summary judgment on Olson's gender discrimination

claim.

## C.  Conclusion

Olson has not demonstrated a *prima facie* case of gender discrimination because

the undisputed facts in the record show that Olson was not qualified for the June CCT

position.  Even if Olson had established a *prima facie* case, her gender discrimination

claim fails because, viewing the evidence in the record in the light most favorable to

Olson, no reasonable finder of fact could conclude that Qwest's legitimate non-discriminatory reason for not promoting Olson to the June CCT Position was a pretext for gender discrimination.  Qwest is entitled to summary judgment on Olson's gender discrimination claim.

## V.  RETALIAION

I review the facts on which Olson bases her retaliation claim.  On August 16, 2006, Olson filed a charge of discrimination with the EEOC, alleging that Qwest discriminated against her based on her gender when Qwest did not hire her for the June CCT Position.  On August 22, 2006, Olson applied for the four CCT positions that became available in August, and she again answered an initial screening questionnaire as part of the application process.  As detailed in Section III of this order, Sandy Brown of the Qwest staffing department discovered significant discrepancies between Olson's answers to certain identical questions on Olson's initial questionnaire for the June CCT Position and her initial questionnaire for the CCT positions for which Olson applied in August.  Olson admits that she answered the same questions concerning her experience differently on the June and August questionnaires.  *Motion for summary judgment*, Exhibit A (Olson Deposition), 117:13-25; 119: 12-25; 120: 24-25; 121: 1-6; 125:21-24.  Olson admits that on the June questionnaire, she indicated that she had the required level of experience when, in fact, she did not.  *Motion for summary judgment*, Exhibit T, p. 15.

On August 29, 2006, Sally Bakarich, Manager of Network Operations, interviewed Olson about the discrepancies and Bakarich told Olson that Bakarich would recommend that a documented discussion be placed in Olson's file concerning the discrepancies.  On September 1 and September 6, 2006, Bakarich and Lesli Burden,

Lead Human Resources/Labor Generalist, discussed the issue.  Burden concluded that a written warning should be placed in Olson's file.  *Motion for summary judgment*, Exhibit V (Burden Affidavit), ¶¶ 6-7.  On September 27, 2006, Burden confirmed with Bakarich that this would be the discipline imposed on both Olson and Maltese.  *Id.*  This decision was formalized on October 23, 2006, when Olson's immediate supervisor issued a written warning to Olson for the falsification of Olson's answers on the June 2006 initial screening questionnaire.  *Motion for summary judgment*, Exhibit X.  Olson alleges that the written warning was issued to her in retaliation for her filing of her EEOC charge on August 16, 2006. Burden says she was not aware of Olson's EEOC charge when Burden made the decision to issue a written warning to Olson.  *Motion for summary judgment*, Exhibit V (Burden Affidavit), ¶ 8. Burden's sworn statement is unrefuted by Olsen.

The **McDonnell Douglas** burden shifting analysis is applicable to a Title VII retaliation claim.  **Pinkerton v. Colorado Dept. of Transp.**, 563 F.3d 1052, 1064 (10th Cir. 2009); **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04 (1973). I evaluate Olson's retaliation claim under this framework.

### A.  *Prima Facie* Case

To establish a *prima facie* case of retaliation, Olson must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse, meaning that the employer's action might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between the protected activity and the materially adverse action.  **See, e.g., Semsroth v. City of Wichita**  555 F.3d 1182, 1184 (10th Cir. 2009).  Qwest argues in its motion for summary

judgment that Olson has not established a causal connection between the filing of her EEOC charge and the issuance of a written warning to Olson.  I agree.

A decision maker cannot engage in retaliation for a particular action by an employee if the decision maker is not aware of the action that allegedly motivated the retaliatory action.  ***Petersen v. Utah Dept. of Corrections***, 301 F.3d 1182, 1188 (10th Cir. 2002).  The decision to issue a letter of warning to Olson was made by Burden, based on information provided by Bakarich.  Again, Bakarich recommended that a documented discussion, a lesser form of discipline, be placed in Olson's file.  Burden says her decision to issue a written warning was made no later than September 6, 2006, but was not formalized until October 23, 2006.  Burden says she did not know of Olson's EEOC charge when she made this decision.

Olson contends that the decision to impose discipline did not occur until October of 2006, because the written warning was not formally issued until October 23, 2006, and she argues that the managers making the decision to impose disciplinary action knew of Olson's EEOC charge by October 2006.  Olson cites e-mails she exchanged with Michael Ayers, an employee of Qwest's legal affairs employment law group, before the written warning was placed in Olson's file. *Objection to motion for summary judgment* [#36], Exhibit 6.  The e-mails indicate that Ayers was assigned to investigate Olson's EEOC charge, but they do not indicate that Burden knew of the EEOC charge in October of 2006.  Olson testified in her deposition that she does not know when Qwest management learned of her EEOC charge, or which particular individuals in management learned of her EEOC charge.  *Reply in support of motion for summary judgment* [#37], Exhibit CC (Olson Deposition), 149: 5 - 15.  Olson cites no evidence that contradicts Burden's statement that the decision to issue a written warning was

made in early September.  Further, Olson cites no evidence that supports her

contention that Burden knew of Olson's EEOC charge before Burden made her

decision.  Absent evidence that Burden knew of Olson's EEOC charge before Burden

made her decision to issue a written warning, Olson cannot establish a causal

connection between her filing of an EEOC charge and Burden's decision to issue a

written warning to Olson.  Thus, Olson has not established a *prima facie* case of

retaliation, and Qwest is entitled to summary judgment on Olson's retaliation claim.

### B.  Pretext

Alternatively, if Olson had established a *prima facie* case of retaliation, then the

next step in the **McDonnell Douglas** analysis is to determine whether Qwest has stated

a legitimate non-discriminatory reason for issuing a written warning to Olson.  The

written warning was issued based on the conclusion that Olson had misrepresented her

qualifications on the initial questionnaire for the June CCT position.  Olson admits that

on the June questionnaire, she indicated that she had the required level of experience

when, in fact, she did not.  Applying the Qwest Code of Conduct provision concerning

accurate books and records, Olson's misrepresentations constitute a legitimate, non-

discriminatory reason for issuing a written warning to Olson.

In an effort to demonstrate pretext, Olson cites delay in the disciplinary process,

which started in late August and ended with the written warning on October 23, 2006.

Initially, Olson was told that a lesser sanction would be imposed but, she contends, after

the managers involved in the investigation learned of Olson's EEOC charge, more

harsh discipline was imposed.  As discussed above, however, Olson has not come

forward with any evidence demonstrating when Burden, the decision maker, learned of

the EEOC charge.  Olson contends that Qwest admits that the relevant managers were

aware of Olson's EEOC charge by October 3 or 4 of 2006.  *Objection to motion for summary judgment* [#36], p. 7.  However, she cites no evidence to support this contention.

Viewing the evidence in the record in the light most favorable to Olson, the evidence cited by Olson would not support a finding by a reasonable fact finder that Qwest's legitimate, non-discriminatory reason for issuing a written warning to Olson is unworthy of credence, and was a pretext for retaliation.  On this basis also, Qwest is entitled to summary judgment on Olson's retaliation claim.

C.  Conclusion

Olson has not demonstrated a *prima facie* case of retaliation because she has not produced evidence that supports her allegation that there is a causal connection between her EEOC charge and Burden's decision to issue a written warning to Olson. Even if Olson had established a *prima facie* case, her retaliation claim fails because, viewing the evidence in the record in the light most favorable to Olson, no reasonable finder of fact could conclude that Qwest's legitimate non-discriminatory reason for issuing the written warning was a pretext for retaliation.  Thus, Qwest is entitled to summary judgment on Olson's retaliation claim.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Motion for Summary Judgment and Memorandum Brief in Support** [#26] filed June 15, 2009, is **GRANTED**;

2.  That the parties' **Stipulated Motion To Vacate Trial Date** [#44] filed October 20, 2009, is **DENIED AS MOOT**;

3.  That plaintiff's claims against defendants in this lawsuit are **DISMISSED WITH PREJUDICE**;

4.   That judgment **SHALL ENTER** for the defendants, Qwest Communications

Corporation and Qwest Communications International, against the plaintiff, Tessa

Olson;

5.   That the Trial Preparation Conference, currently scheduled for **Friday,**

**October 30, 2009**, at **9:00 a.m.**, as well as the trial, currently scheduled to commence

on **Monday, November 16, 2009**, at **8:30 a.m.** are **VACATED**; and

6.   That the defendants are **AWARDED** their costs, to be taxed by the Clerk of

the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 23, 2009, at Denver, Colorado.

                                        **BY THE COURT:**

                                        Robert E. Blackbum
                                        United States District Judge